THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PLAINTIFFS IN ERROR, v. GEORGE W. BAILEY, DEFENDANT IN ERROR.

1. Under the supplement to the charter of the city of Hoboken, of February 28th, 1865, the mayor and common council had authority to borrow money, for the purpose of paying bounties to volunteers, in advance of any issue of bonds provided for by the 5th section of said act; and the power necessarily resulted from this authority, to make contracts with volunteers, and to pay them according to the terms of the contracts, either in money or to issue to them a scrip or writing, as the evidence of the city's promise or obligation to pay.

2. To entitle a volunteer to the bounty offered it was not necessary that, at the time of his enlistment, he should be a resident of the city of Hoboken. *Hawthorne* v. *City of Hoboken*, 6 *Vroom* 247, approved.

3. Where the minutes of the common council show that a demand was made and the issue of scrip was refused, and the refusal was placed on the ground that the city was under no legal obligation to issue it because the volunteer was not a resident of Hoboken—*held*, that, having distinctly put the refusal to issue the scrip on the ground of the non-residence of the volunteer, they must be held to have waived all objections going merely to the form of the demand or the person making it.

On error to the Supreme Court.

This case was tried at the Hudson Circuit, before Justice Bedle and a jury. A verdict having been rendered for the plaintiff, and judgment entered thereon, a writ of error was brought to this court.

For the plaintiffs in error, *J. W. Vroom* and *Thos. N. McCarter*.

For the defendant in error, *Dixon* and *Cortlandt Parker*.

The opinion of the court was delivered by

WOODHULL, J.	This suit was brought by the defendant in error, Bailey, to recover damages for the refusal of the city of Hoboken to issue to him city scrip according to the terms of the following resolution:

"*Resolved,* That a city scrip for the amount of $350, in addition to the county bounty of $400, be issued to every drafted man or volunteer from this city, entering the service under the late call of the President of the United States for three hundred thousand men; *provided,* such drafted man or volunteer shall enter the military service of the United States, or furnish an acceptable substitute for one or more years, and shall be duly credited to the quota of this city under the present call."

This resolution was passed March 18th, and approved by the mayor March 20th, 1865. On the 12th of the following April, Bailey, knowing of the offer made by the city, acting upon the faith of it, and with the expectation of being benefited by it, enlisted and was mustered into the military service of the United States, and was duly credited to the quota of the said city, under the call referred to in the resolution.

On the trial of the cause before Mr. Justice Bedle, at the Hudson Circuit, the plaintiff below obtained a verdict upon which judgment was afterwards entered in the Supreme Court. This judgment is now sought to be reversed for alleged errors in the charge of the court below.

It was claimed there, as it has been urged here, that the mayor and council of Hoboken had no power to pass the resolution of March 20th, and that it was therefore inoperative and void.

Upon this question the court below instructed the jury substantially as follows: That the scrip, referred to in the resolution, is nothing more than a promise to pay the volunteer, or the evidence of the obligation to pay, and that the power to issue scrip for such purposes necessarily resulted from the power given to the common council of the city of Hoboken, by the act of February 28th, 1865. That under the 4th section of that act they had an independent power to borrow money, and were not obliged to wait to raise it by selling their bonds; that in those times things had to be done quickly, and if a township had to wait to raise money by the

slow process of selling bonds, the chances were that the drafted men would be called for before they could fill up the quota.

The exception taken in behalf of the city, to the foregoing instructions, does not appear to be well founded.

The act of February 28th, 1865, was passed as a supplement to the charter of the city of Hoboken, and confers upon the city power which it did not previously possess.

In the 1st and 5th sections respectively, the act provides for the issuing of two distinct series of bonds; the first not to exceed in amount $50,000, and the proceeds of which were to be applied (section 3d,) to the liquidation of the indebtedness already incurred by the mayor and council, and not previously provided for, in the payment of bounties to volunteers, substitutes and drafted men to fill the quota of the said city. Section 4th is in these words: "That it shall and may be lawful for the said mayor and council to borrow a sum of money not exceeding $100,000, for the purpose of paying such bounties as the said mayor and council may from time to time deem expedient to every volunteer, drafted man or substitute obtained to fill the quota of the city of Hoboken, under the present call of the President of the United States, or the quota upon any future call which may be hereafter made by the said President." Then comes section 5th, providing for the second series of bonds as follows: "That it shall and may be lawful for the said mayor and council to secure the payment of such indebtedness, by issuing bonds in the same manner and under the same restrictions expressed in the 1st section of this act," &c.

It has been earnestly insisted, on the part of the plaintiffs in error, that the power to borrow money, conferred by the 4th section, is restricted by the provisions of the 5th section. That the legislature must be presumed to have intended that the indebtedness authorized by the former, should be incurred only through and by means of the issue and sale of the bonds provided for by the latter. But the language of the act does not appear to me to support that position. On the contrary, it seems plainly to imply that these bonds were not, any

more than those of the first series, designed to be used merely as the instruments for creating an indebtedness, but also, and chiefly, for the purpose of securing the payment of an indebtedness already existing.

But the most persuasive argument against the construction contended for by the plaintiffs in error, is found in the consideration that, if admitted, it would in effect, frustrate the very object which the legislature had in view in passing the act, and I may add, which the city had in view in procuring it to be passed.

What the legislature intended to grant, and what the mayor and council of Hoboken desired to obtain, was not merely authority to raise money, but such authority as would enable the city to raise it with certainty and with the least possible delay, to meet an emergency which, the act itself shows, could neither be evaded nor postponed.

The act is a part of the history of perilous times, and should be read in the light of those times.

To have restricted the city in the face of such an emergency as then existed, to the simple mode of raising money by the issue and sale of city bonds at par, would have been no better than mockery.

With respect to this part of the case, my conclusion is, that the mayor and council of Hoboken had, under this act in question, authority to borrow money for the purpose of paying bounties to volunteers in advance of any issue of the bonds provided for by the 5th section ; and that, having this authority, there necessarily resulted from it the power to make contracts with the volunteers, and to pay them according to the terms of such contracts, either in money, or as a temporary arrangement, to issue to them, instead of the ready money, a scrip or writing, in some form convenient for the city, and acceptable to the volunteers, as evidence of the city's promise and obligation to pay.

The next exception taken by the defendants below, was to that part of the charge which held that it was not necessary, under the terms of this resolution, that the volunteer should

be, at the time of his enlistment, a resident of the city of Hoboken; that, if he enlisted from the city without being a resident, and was accepted by the government, and credited to the city, it was sufficient.

The question raised by this exception had been previously examined and decided by the Supreme Court, in the case of *Hawthorne* v. *City of Hoboken*, 6 *Vroom* 247, and the instructions just referred to, will be found to be in strict conformity to the doctrine held in that case.

Mr. Justice Depue, in delivering the opinion of the court, and referring to this resolution of March 20th, says: "The resolution does not specially restrict the offer of a bounty to volunteers who are resident within the city. The object of offering bounties was to obtain volunteers to relieve the citizens, as far as was practicable, from the burdens of a draft. Any volunteer who was accepted by the provost marshal as a part of the quota due from the city, and was actually credited upon such quota, was a volunteer 'from the city,' within the meaning of the resolution."

And, again: "As between the volunteer and the city, his residence and qualifications to enter the service as a credit on the quota of the city, are immaterial, if, in fact, the military authorities were satisfied to accept him as a volunteer upon such credit, and the city received the benefit of his enlistment by a credit on its quota."

Of the correctness of the views expressed by the Supreme Court, in the case just cited, and of the reasoning by which they are sustained in the opinion, I entertain no doubt.

There was, therefore, in my judgment, no error in that part of the charge which forms the subject of the second exception. The only remaining question is, whether the court below erred in charging the jury that, under the testimony as it then stood, there had been a sufficient demand by the plaintiff for the delivery of the scrip, and a refusal, or, what was equivalent to a refusal by the city, to deliver it.

The evidence bearing upon this part of the case is found in the testimony of Hatfield, the equitable owner of the scrip

in question, and in the minutes of the city council. Hatfield says : " I made a demand upon the council of the city of Hoboken for the scrip ; I think it was on the 31st of May, 1865."

The minutes of the council of May 31st, being produced, and read as follows : " A communication signed by James T. Hatfield, &c., was received, setting forth that they held sixty-four certificates of the provost marshal for the mustering in of that number of volunteers, credited to the city of Hoboken on the late call, and presenting a formal demand for the issuing to them of the city scrip for the amount of $350 for each volunteer. Referred to the bounty committee."

The witness then continued : "This certificate of George W. Bailey was included in the number mentioned in that demand. The scrip was never issued to me nor the money paid. As far as I understand, it never has been issued by the authorities of Hoboken."

In addition to this there appears in the council proceedings, of June 15th, 1865, the report of the bounty committee upon the communication recited in the minutes of May 31st, setting forth the conclusions at which they had arrived, and among them, the following : That the men, claimed to be credited to the city of Hoboken, were not residents of the city of Hoboken ; that the mayor and council never authorized or sanctioned the crediting of these men on the quotas of the different wards of the city ; that the city, under the resolution in question, never intended to pay any bounty to a volunteer who was not a resident of the city ; that the city is not legally compelled to issue the scrip asked for ; and, finally, that the scrip should not be issued.

It has been urged, on the part of the plaintiffs in error, that the report of the bounty committee cannot properly be received as evidence of a refusal by them to issue the scrip because they had never taken any action upon it.

This report, it is true, has not, so far as appears in the case, been formally accepted and adopted by the common council.

But proof is not wanting that they acquiesced in, approved

and, in effect, adopted its negative recommendation, viz. : that the scrip should not be issued.

It was also objected to the legality of the demand, that there was no evidence laid before the common council to show that Hatfield was entitled to make it.

But this objection comes too late. Hatfield, being the endorser and holder of Bailey's certificate, and, therefore, the equitable owner of his claim, was a proper person to make the demand, and might easily have satisfied the council of his right had they questioned it at the time. Having failed to do this, and having distinctly put their refusal to issue the scrip upon an entirely different ground, they must be held to have waived all objections, going merely to the form of the demand or to the person making it.

Judgment affirmed.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, DAL-RIMPLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, DODD, GREEN, LILLY, WALES. 11.

*For reversal*—None.